UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                          :

ROBERT L. CHISHOLM,           :      CASE NO. 1:15-CV-00174

          Plaintiff,         :

                          :

vs.                        :      OPINION & ORDER
                          :      [Resolving Doc. 8, 19, 20]

CUYAHOGA COUNTY,         :

          Defendant.       :

                          :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Plaintiff Robert Chisholm sues Defendant Cuyahoga County and claims Cuyahoga County interfered with Plaintiff Chisholm's Family and Medical Leave Act ("FMLA") rights and claims Cuyahoga County retaliated against Chisholm for exercising his FMLA rights.[1]  Defendant Cuyahoga County initially sought judgment on the pleadings, saying that Plaintiff Chisholm's claims were precluded because of a state administrative proceeding that reviewed Chisholm's termination.[2] The Court converted the motion to a motion for summary judgment[3] and gave the parties an opportunity to submit additional briefing.[4]  The parties then filed cross motions for summary judgment on the merits of the FMLA interference and retaliation claims.[5]

      For the foregoing reasons, the Court **DENIES** Defendant Cuyahoga County's motion that the administrative decision stops Plaintiff's claims.  However, the Court **GRANTS** Defendant

---

[1] Doc. 1.

[2] Doc. 8. Plaintiff opposed the motion both in its brief moving to convert the motion for judgment on the pleadings, and later in the subsequent summary judgment briefing.  Docs. 10, 22.  Defendant put forward a reply incorporated into its reply brief on the later motion for summary judgment.  Doc. 25.

[3] Doc. 18.

[4] Id.

[5] Docs. 19, 20.  The parties filed opposition briefs, Docs. 21, 23 and reply briefs, Docs. 24, 25.

Case No. 1:15-CV-00174
Gwin, J.

Cuyahoga County's motion for summary judgment on the merits of the FMLA action. The Court

**DENIES** Plaintiff's motion for summary judgment.


### I. Factual Background

From May 23, 1988 until March 6, 2013, Defendant Cuyahoga County employed Plaintiff

Robert Chisholm as an inspector for the County's Weights and Measures Department.[6] Cuyahoga

County eventually fired Chisholm after he ignored repeated notices that he was required to satisfy

a continuing education requirement for eighteen hours of continuing education in 2012.[7]

In the weeks leading up to the continuing education deadline, Chisholm went on full-time,

and then intermittent, FMLA leave.[8] Chisholm alleges that Cuyahoga County fired him in retaliation

for Chisholm's taking the FMLA leave or, alternatively, that the County interfered with Plaintiff's

rights to FMLA leave.[9] He mostly argues that a fellow inspector, Jack Gallagher was not disciplined

even though Gallagher also failed to satisfy the continuing education requirement. Plaintiff

Chisholm says Gallagher's treatment suggests an inference that Cuyahoga County terminated

Chisholm because he used FMLA rights.

In response, Cuyahoga County says Gallagher skated through only because the Cuyahoga

County Auditor's Office had been corruptly operated and this was changed with a new County

administrative structure.

---

[6] Doc. 1 at ¶¶ 4-5.

[7] *Id.* at ¶ 8.

[8] *Id.* at ¶ 10.

[9] *Id.* at ¶¶ 15-26.

Case No. 1:15-CV-00174
Gwin, J.

### A. Enforcement of Continuing Education Requirements

The Ohio Department of Agriculture requires weights and measures inspectors to complete eighteen hours of continuing education credits each year.[10]  The Ohio Department of Agriculture ("ODA") has the power to enjoin an inspector from working if he has not met the requirement.[11] ODA has not recently used this power or otherwise taken any direct action against a weights and measures inspector who failed to complete their continuing education.[12]  Instead, ODA allows counties to address a particular inspector's failure to complete hours.[13]

As a result, it has fallen to Cuyahoga County to enforce the continuing education requirements for its inspectors.[14]  And the Cuyahoga County Weights & Measures Office has not always enforced the requirement.[15]  Indeed, the parties agree that under the leadership of previous County Auditor Frank Russo, the Office did not enforce the continuing education requirements.[16]

In late 2010, after allegations of misconduct in the Cuyahoga County government emerged, Russo resigned.[17]  Around the same time, the structure of the Cuyahoga County government was changed from an elected County Auditor form to a County/Charter form of government with an appointed County Fiscal Officer, effective January 1, 2011.[18]

These systemic changes led to new standards for employees in the Weights and Measures

---

[10]/Doc. 20 at 4.

[11]/*Id.*

[12]/Doc. 20-3 at ¶ 3.

[13]/Doc. 20-3 at ¶ 6.

[14]/*See* Doc. 20-1 at 50:13-25("I believe, at that time, the State leaves it up to the County to make that decision.").

[15]/Doc. 20 at 4.

[16]/Every County inspector from 2000 to 2010 had, at least once, failed to meet the state's continuing education requirement. *See* Doc. 20 at 4.

[17]/*See generally*, http://www.cleveland.com/countyincrisis/.

[18]/Doc. 19-3 at 3.

Case No. 1:15-CV-00174
Gwin, J.

Department.  In early 2011, all Cuyahoga County Inspectors signed an agreement acknowledging that satisfaction of the eighteen hour continuing education requirement was now mandatory.[19]

However, changes among the supervisory staff took more time.  In 2011, Don Tomaro continued to supervise the Weights and Measures Department.  Tomaro had led the department under Frank Russo in the previous County government.[20]  A new supervisor, Thomas Dobeck, replaced Tomaro in January 2012.[21]

Plaintiff argues that Dobeck's 2012 leadership did not formally change office policies from Tomaro's 2011 leadership.[22]  In contrast, Defendant highlights that the 2012 leadership change led to a different office culture and expectations.[23]  In particular, Defendant highlights that Dobeck told employees that he would enforce the continuing education requirements.[24]

Plaintiff disputes this, pointing to Dobeck's testimony where Dobeck says he used the same tactics as Tomaro to remind inspectors of the requirements.[25]  Moreover, Plaintiff highlights that the same individual, Wade Steen, was the Fiscal Officer who oversaw Weights and Measures during most of 2011 and 2012.[26]  As Fiscal Officer, Wade Steen was ultimately in charge of discipline

---

[19]/Doc. 19 at 9. Doc. 19-3, Ex. A (Memorandum dated January 6, 2011 sent to "Weights & Measures Department" which reads in relevant part: "It is mandatory that all inspectors of the Weights and Measures Department complete 18 hours of continuing education annually.  As a courtesy, the director will notify you of classes that are offered throughout the year.  But it is ultimately your responsibility to remain certified.  Failure to do so may result in discipline up to and including removal.")

[20]/Doc. 19 at 9.

[21]/Doc. 19-3 at 2.

[22]/Doc. 20-1 at 60:2 to 60:5.

[23]/See id. at 54:25 to 55:2 ("Policy tends to change when people change.").

[24]/Doc. 19-3 at ¶ 4 ("Starting in late-January 2012 . . . I began emphasizing the need for all inspectors in the department to obtain the required continuing education credit hours in 2012.").

[25]/Doc. 23 at 5-6; Doc. 20-1 at 70:6-71:1.

[26]/Steen was appointed on May 31, 2011.  Doc. 19-8.

Case No. 1:15-CV-00174
Gwin, J.

decisions for parts of Tomaro's tenure, as well as Dobeck's tenure.[27/]

An inspector named Jack Gallagher failed to meet his continuing education requirements in 2011, the first year of the new County Government structure, and the year before Plaintiff Chisholm failed to complete the education hours.[28/]  Unlike Plaintiff Chisholm, Gallagher was not disciplined.[29/]  The parties dispute whether Tomaro informed Wade Steen of Gallagher's failure to meet the requirements.[30/]  In April 2012, Dobeck reviewed Gallagher's 2011 work performance but did not recommend Gallagher for discipline because "I was not his supervisor in 2011 and I did not have the opportunity to warn Mr. Gallagher of any potential penalty for failing to obtain the required continuing education hours.  Therefore, I did not raise the issue of Jack Gallagher's 2011 continuing education shortfall to upper-level management."[31/][32/]

Gallagher met the continuing education requirements in 2012.


*B. Discipline for Chisholm.*

Since 1988, Plaintiff Robert Chisholm worked as an inspector for Cuyahoga County.  This case centers on Chisholm's failure to complete his required 2012 continuing education hours.

After the change of County government, the County set a February 7, 2013, deadline for all

---

[27/]*See* Doc. 19 at  3; Doc. 23 at 4.

[28/]*See* Doc. 20 at 3-4.

[29/]*Id.*

[30/]Doc. 23 at 10 n.7, Doc. 19 at 3.  In contrast, Plaintiff has not been able to show a material dispute as to who acted as Chisholm's and Gallagher's immediate supervisors during their respective relevant years.  Plaintiff maintains that "in 2011, 2012 and 2013, Steen was the supervisor of both Chisholm and Gallagher."  Doc. 23 at 5.  However, Steen was the Fiscal Officer, not the immediate supervisor.  The inspectors' *immediate* supervisor switched from Tamaro in 2011 to Dobeck in 2012 and 2013.  *See* Doc. 19-3.

[31/]*Id.*

[32/]Doc. 19-3 at  ¶ 4.

Case No. 1:15-CV-00174
Gwin, J.

inspectors to complete their eighteen hours of 2012 continuing education requirement.[33/]  Chisholm completed nine of the 2012 hours in the spring.[34/]  He says weather conditions resulting from Hurricane Sandy prevented him from attending a seminar that could have completed the remaining continuing education requirement.[35/]  He missed other opportunities to take the continuing education because of taking standard sick time for an illness.[36/]

Weights and Measures supervisor Dobeck repeatedly reminded Chisholm and other inspectors of the eighteen hour requirement.[37/]

On November 19, 2012, Plaintiff received notification from the County's Human Resources department that he faced termination if he failed to obtain the remaining hours.[38/]  Chisholm responded by explaining why he had not been able to attend the earlier trainings.  He concluded "I recognize the need to fulfill requirements to remain in good standing as an inspector, and have every intention of fulfilling them as soon as possible."[39/] Despite the warning that Chisholm needed to complete the 2012 continuing education requirement, Chisholm did not complete the additional hours required.

On January 25, 2013, Plaintiff attended his annual performance review with Dobeck.  Dobeck wrote that Plaintiff "Did not complete required 18 hours of training, must find way in future to get

---

[33/]*Id.*  There is not conclusive evidence of when during the year the February 7, 2013 deadline was set. Defendant states it may have been set as early as February 2012.  Doc. 24 at 3.  At the very least, Plaintiff Chisholm was informed of the deadline in the November 9, 2012 letter sent by Human Resources.  Doc. 19-3, Ex. B.

[34/]Doc. 20 at 5.

[35/]*Id.*

[36/]*Id.*

[37/]Doc. 24 at 3-4 (collecting citations to the record of meeting minutes and communications regarding the continuing education requirements).

[38/]Doc. 19-3, Ex. B.

[39/]Doc. 20 at 6.

Case No. 1:15-CV-00174
Gwin, J.

mandatory training."[40]

      Chisholm became sick near the end of 2012.  On January 28, 2013, Plaintiff completed his application for FMLA leave.[41]  He received continuous (retroactive) FMLA leave from January 14, 2013, to February 4, 2013, and was approved for intermittent FMLA leave from February 5, 2013, until April 30, 2013.[42]  During this period, Plaintiff worked some days, including January 22-25, 2013, and February 4, 2013.[43]  There were opportunities to take the required courses online on the days he was in the office as part of his intermittent FMLA leave.[44]

      Chisholm did not complete the additional hours by February 7, 2013.  After the deadline passed, he continued to work on an intermittent basis, but still did not complete the additional hours.

      Chisholm attended a "Pre-Disciplinary Conference" on February 20, 2013 and was again warned that he needed to complete the remaining training.[45]  He did not complete the additional hours.  He was terminated in a letter dated March 4, for "neglect of duty and insubordination" based on the failure to complete the continuing education hours.[46]  The termination was effective March 6, 2013.[47]

---

[40]/Doc. 24 at 6.

[41]/Doc. 19 at 3.

[42]/*Id.*

[43]/*Id.*

[44]/The parties dispute whether so-called "scales/service" classes were available to Chisholm.  *See* Doc. 23 at 9; Doc. 24 at 8-9.  This is immaterial.  There is no dispute that online classes were available on each day that Plaintiff was in the office during his intermittent leave.  The online courses may have required an additional registration fee.  But this does not infringe on protected FMLA activity when the County maintains that Plaintiff could have requested that the County pay the fee.  *See* Doc. 24 at 9.

[45]/Doc. 19-13.

[46]/Doc. 19-11.

[47]/*Id.*

Case No. 1:15-CV-00174
Gwin, J.

### C. Post-termination Administrative Hearing

Plaintiff Chisholm administratively challenged his termination. The standard at the subsequent hearing was whether Chisholm's "due process rights were observed" and whether the termination "substantially complied with the procedural requirements" established by the Ohio Revised Code.[48] After a hearing at which both Chisholm and the County had attorneys present and called witnesses, the Hearing Officer found that Chisholm's firing was an unduly harsh punishment for Chisholm's failure to complete state mandated continuing education.[49] The Hearing Officer concluded that Chisholm's "FMLA leave contributed significantly to Appellant's inability to comply with the continuing education requirement by the February 7, 2013 deadline set by the Human Resources Department."[50] However, the Hearing Officer also noted that he was not addressing FMLA claims on the merits because "I don't have jurisdiction over the FMLA, you know, interferences. They can come in for you to show that he was on disability and could not attend the classes, that's fine. But just to let you know, I'm in no position to rule on whether or not his FMLA was interfered with."[51]

The hearing officer ruled that Chisholm's termination be converted to a suspension without pay until Chisholm completed the required continuing education.[52] The hearing officer also recommended that Cuyahoga County could set a reasonable deadline for Chisholm to complete the

---

[48]/Doc. 20-9 at 3.
[49]/Doc. 20-9.
[50]/*Id.*
[51]/Doc. 20-8 at 20:6-12.
[52]/Doc. 20-9 at 4.

Case No. 1:15-CV-00174
Gwin, J.

required training.[53]

The County objected to the report and recommendation,[54] but its objections were overruled by the Personnel Review Commission, which fully adopted the report and recommendation.[55]

The County gave Chisholm until August 15, 2014 to obtain his continuing education credits.[56]  Inexplicably, Chisholm did not complete the remaining nine hours of credits.

Chisholm has been terminated from the Office of Weights and Measures, and brings this lawsuit alleging substantive FMLA claims.

## II. Law and Analysis

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[57] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[58]  Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[59]  The existence of some doubt as to the material facts is insufficient to defeat a motion for

---

[53]/*Id.* at 5.

[54]/Doc. 10-1.

[55]/Doc. 8-6.

[56]/Doc. 8 at 6.

[57]/*Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. Pro. 56(a)).

[58]/See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[59]/See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Case No. 1:15-CV-00174
Gwin, J.

summary judgment.[60/]  But the Court views the facts and all reasonable inferences from those facts

in favor of the non-moving party.[61/]

The moving party may also meet its burden under Rule 56 by "demonstrating the absence of

evidence to support one of the essential elements of the nonmoving party's claim."[62/]

### B. Preclusion

As an initial matter, Cuyahoga County argues that the earlier state administrative process

adjudicated the FMLA claims and therefore forecloses Chisholm's claims in this forum.  Plaintiff

opposes, arguing that the administrative process discussed the FMLA leave, but did not adjudicate

the federal FMLA claims.[63/]

The Sixth Circuit follows a three-step test to determine whether a state agency's fact-finding

should be given preclusive effect: (1) was the administrative agency acting in a judicial capacity; (2)

would the agency's determination have preclusive effect under state law; and (3) does the federal

action seek to litigate issues already determined by the state agency.[64/]

Plaintiff is correct that the state administrative proceedings fail the third prong of this test.

The present action does not litigate issues already determined by the state agency.  Indeed, the

statements of the Ohio Hearing Officer shows that the administrative proceeding addressed the

---

[60/]*Id.* at 586.

[61/]*Killion*, 761 F.3d at 580 (internal citation omitted).

[62/]*Marie v. American Red Cross*, 771 F.3d. 344, 351 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 322-325).

[63/]The motion was initially fashioned as a motion for judgment on the pleadings.  Doc. 8.  Plaintiff moved to convert and simultaneously opposed the motion on the merits.  Doc. 10.  The Court granted leave to convert the motion to a motion for summary judgment.  Doc. 18.  Plaintiff subsequently filed an additional opposition brief.  Doc. 22  And Defendant replied in support of its motion in conjunction with its later briefing.  Doc. 24 at 12-14.

[64/]*Nelson v. Jefferson Cnty.*, 863 F.2d 18, 19 (6th Cir. 1988).

-10-

Case No. 1:15-CV-00174
Gwin, J.

termination.  The hearing may have concerned the facts regarding FMLA leave.  But the hearing

question was whether the termination was procedurally adequate.  The hearing did not adjudicate

whether Cuyahoga County violated FMLA leave law.  As a result, there is no preclusive effect of

the state hearing.[65/]  The Court **DENIES** Defendant's converted motion for summary judgment as

to preclusion.


*C. FMLA Retaliation Claim*

     *i. Standard*

Retaliation claims under the FMLA "impose liability on employers that act against employees

specifically *because* those employees invoked their FMLA rights."[66/]  To establish a prima facie

retaliation case, a plaintiff must show (1) that he engaged in some activity that is protected by the

FMLA; (2) that the employer knew the employee was exercising his rights under the FMLA; (3) after

learning of the employee's exercise of his FMLA rights, the employer took an adverse employment

action against him; and (4) there was a causal connection between the employee's FMLA activity

---

[65/]Defendant also argues in the alternative that Plaintiff should at least be barred from using the findings of the state proceeding against the County in the present litigation.  It is true that a party opposing a motion for summary judgment cannot rely on inadmissable evidence to create a genuine issue of material fact.  *See, e.g.*, *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483 (6th Cir. 2002).  However, Defendant cannot demonstrate at this time that the conclusions of the entirety of the state administrative proceedings are inadmissible.

    First, Defendant argues that the state proceeding has minimal probative value.  However, the relation of the termination procedures to Plaintiff Chisholm's FMLA leave is at the core of this case.  The state proceedings may be highly probative to some of Plaintiff's and Defendant's arguments.

    Second, Defendant argues that the state proceedings would unfairly prejudice the jury, who might give too much weight to the findings of the underlying official.  Defendant relies on citations to cases involving probable cause letters from the EEOC.  The letters address the same substantive claim as the resulting lawsuit.  *See, e.g.*, *Williams v. Nashville Network*, 132 F.3d 1123 at 1128 (6th Cir. 1997).  This line of cases is inapplicable here.  The state official here did not address the substantive claims at issue in this lawsuit.

    Defendant's arguments as to inadmissibility fail.  However, the Court is not bound by the findings of fact in the state hearing in determining the motions for summary judgment.

[66/]*Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

-11-

Case No. 1:15-CV-00174
Gwin, J.

and the adverse employment action.  Only the fourth prong is disputed in this case.

Like most retaliation cases, Plaintiff does not offer any direct evidence that Cuyahoga County retaliated against him because he used his rights under the FMLA

But, ~~the~~ Plaintiff can prove the "causal connection" under the fourth prong with indirect evidence. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."[67]

Temporal proximity between the FMLA leave and the adverse action can be sufficient to establish a causal connection.[68]  However, temporal proximity does not necessitate a finding of causal connection in all cases.  Rather, other employment circumstances and deadlines may negate the existence of a potential "causal connection" raised by close temporal proximity.[69]

FMLA retaliation claims proven by indirect evidence are analyzed under the *McDonnell Douglas*[70] evidentiary framework.  Once the plaintiff has made out a prima facie case of FMLA retaliation, the defendant then has the opportunity to present a non-discriminatory reason for the adverse action.[71]  In order to prevail on a motion for summary judgment, the plaintiff must then rebut the proffered reason as a mere pretext for discriminatory action.[72]  A plaintiff may show pretext with

---

[67]*Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

[68]*See, e.g.*, *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283-84 (6th Cir. 2012).

[69]*Cf. Krumheuer v. GAB Robins North America Inc.*, 484 Fed. Appx. 1, at 5-6 (6th Cir. 2012) (Plaintiff notified his employee of intent to take FMLA leave on January 24, 2007.  He was terminated approximately 14 days later.  The court recognized the "close temporal proximity."  Nevertheless, the court found that the Plaintiff still had not established a causal connection as the termination had been part of nation-wide layoffs that happened to occur near the time of the Plaintiff's FMLA leave request).

[70]411 U.S. 792 (1973).

[71]*See Donald v. Sybra*, 667 F.3d 757, 762 (6th Cir. 2012).

[72]*Id.*

-12-

Case No. 1:15-CV-00174
Gwin, J.

circumstantial evidence by demonstrating that an employee who was similarly situated "in all relevant aspects" engaged in "substantially similar" conduct but was not terminated.[73/]  Alternately, a plaintiff may show pretext by demonstrating that the offered reason did not actually motivate the adverse employment action.[74/]

### ii. Analysis

Here, Plaintiff Chisholm does not establish a prima facie case of discrimination.  Although the bar is low, there is not any credible evidence that enables the Court to deduce a causal connection between Plaintiff's termination and Plaintiff's using FMLA leave.  The February 7, 2013 deadline for completing 2012 continuing education requirements was established long before Plaintiff took FMLA leave.  It applied to each inspector equally.  Plaintiff was made aware of the requirement throughout the year.  Indeed, Plaintiff was aware of the requirement long before he realized that he would need to take FMLA leave, and long before he informed the County of his intent to take leave. He was aware of the need on the days he returned to work on the intermittent days of on his FMLA leave.  Indeed, Chisholm was given, in effect, a month longer than the set deadline to correct the issue.  He still did not acquire the needed nine hours, even though he was in the office on an intermittent basis.  And even after the hearing officer reinstated Chisholm subject to completing the continuing education, Chisholm failed to get any more continuing education hours.

---

[73/] *Noble v. Brinker Intern., Inc.*, 391 F.3d 715, 729 (6th Cir. 2004) (quoting *Mitchell v. Toledo Hosp.*, 964 F. 2d 577, 583 (6th Cir. 1992)) ("Thus, to be deemed 'similarly-situated', [sic] the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.")

[74/] *Seeger v. Cincinnati Bell Telephone Co., LLC*, 681 F.3d 274 (6th Cir. 2012).

-13-

Case No. 1:15-CV-00174
Gwin, J.

Plaintiff has also been unable to point to any other evidence that retaliation motivated the termination by the County.  Alone, the close temporal proximity does not establish a causal connection.  The happenstance of the temporal proximity was caused by a deadline put in place long before the FMLA leave was taken.  The FMLA is not a shield to protect employees from legitimate disciplinary action.

Even if temporal proximity were sufficient to make out a prima facie case of FMLA retaliation, Plaintiff's claim still fails the *McDonnell Douglas* evidentiary framework.  Defendant has offered its non-discriminatory reason for the adverse action: Chisholm's failure to acquire sufficient continuing education credit.  To prevail on its motion for summary judgment, the Plaintiff must rebut this reason and must show that this explanation is pretext.  Plaintiff offers two theories; neither persuades.

First, the Plaintiff points to the treatment of fellow inspector Gallagher, arguing that Gallagher "engaged in the exact same conduct as Chisholm and was not terminated."[75] However, Plaintiff does not show that Chisholm and Gallagher were similar in all "relevant aspects."

During the relevant years, Chisholm and Gallagher had different direct supervisors.  Dobeck was not Gallagher's supervisor in 2011 when the conduct occurred.  And Dobeck was not comfortable disciplining Gallgaher at his April 2012 review because Dobeck "was not his supervisor in 2011 and [he] did not have the opportunity to warn Mr. Gallagher of any potential penalty for failing to obtain the required continuing education hours."

The supervisory change and the County's changes make Chisholm differently situated from Gallagher.  Gallagher's treatment is not sufficient to establish that defendant's proffered reason is

---

[75]/Doc. 20 at 11.

-14-

Case No. 1:15-CV-00174
Gwin, J.

a mere pretext.[76]

Second, Plaintiff argues that the County's administrative hearing explanations that state law required Chisholm's termination were "false."  Plaintiff points to state administrative hearing testimony where the County implied that state law forced the County to terminate Chisholm because he was no longer licensed by the state as a result of failing to meet the continuing education requirements.[77]

This County argument appears to be an overstatement.  However, Chisholm's termination letter makes no reference to the state license.  Chisholm is terminated for "neglect of duty and insubordination" because of his repeated failures to finish the nine hours of continuing education credit.  Post hoc statements at the administrative hearing are not sufficient to establish that the County's reasons for firing Chisholm were mere pretext.

For these reasons, the Court **GRANTS** summary judgment to Defendant on Plaintiff's retaliation claim.  Plaintiff's motion as to the retaliation claim is **DENIED**.

### D.  FMLA Interference Claim

Interference claims under the FMLA impose liability on employers who "interfere with, restrain, or deny the exercise or the attempt to exercise any FMLA provision.  To survive summary judgment, the plaintiff must show (1) he was an eligible employee under the FMLA; (2) his employer was a covered employer under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice to his employer of his intention to take FMLA leave; and (5) his employer denied

---

[76]/For similar reasons, Gallagher's treatment is also not sufficient to establish a "causal connection" at the earlier stage of the *McDonnell Douglas* balancing.

[77]/Doc. 20 at 11.

Case No. 1:15-CV-00174
Gwin, J.

FMLA benefits to which he was entitled. Only the fifth element is in dispute.[78] Plaintiff argues that by failing to give Chisholm more time to complete the required training, the County prevented him from taking leave and, in effect, required him to work while he was on leave.

Plaintiff's arguments do not succeed. First, Plaintiff was not prevented from taking any of the FMLA leave that he sought. He was not denied FMLA benefits, making his interference claim untenable under precedent that has been accepted by sister district courts.[79]

Even if Plaintiff can state a claim for FMLA interference, he has provided no evidence that the County gave him inadequate time to complete the hours in light of his FMLA leave. He had an entire year to complete the eighteen hours worth of credit. There were opportunities to complete the required credits on the days when he was in the office on intermittent leave before the February 7, 2013 deadline. Most telling, he had weeks, if not months, of time after being expressly told of the potential for termination in which to complete the remaining nine hours. His intermittent FMLA leave did not prevent him from taking the opportunity to complete the credits on the days he was in the office. He was never asked to work while on leave. He was merely asked, while in the office, to take nine hours and meet the County's expectations as to continuing education.

For these reasons, the Court **GRANTS** summary judgment to Defendant on Plaintiff's interference claim. Plaintiff's motion as to the interference claim is **DENIED**.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Cuyahoga County's converted

---

[78]/Doc. 19 at 13.
[79]/*See Buzulencia v. Ohio Bell Tel. Co.*, 2014 WL 3735134 at * 7(N.D. Ohio July 28, 2014) (citing *Seeger*, 681 F.3d at 282).

Case No. 1:15-CV-00174
Gwin, J.

motion for summary judgment as to preclusion.  However, the Court **GRANTS** Defendant

Cuyahoga County's motion for summary judgment on the merits of the FMLA action.  The Court

**DENIES** Plaintiff's motion for summary judgment.

   IT IS SO ORDERED

Dated: October 18, 2015         s/   *James S. Gwin*
               JAMES S. GWIN
               UNITED STATES DISTRICT JUDGE